### SUGAR PRODUCTS CO. v. MOBILE & GULF NAV. CO.

(Circuit Court of Appeals, Fifth Circuit. November 23, 1920.)

No. 3519.

1. Shipping ⬿58(3)—Damages for detention not within demurrage provision of charter.

A clause of a charter party fixing the rate of demurrage for delay beyond the lay days after time for loading or discharging commenced *held* not to measure the damages for detention of the vessel while awaiting designation by the charterer of the port of loading.

2. Shipping ⬿58(3)—Sum for which vessel may be chartered measure of damages for detention by charterer.

The sum for which a vessel can be chartered in the market is the best evidence of her value for computing damages for her detention, and in the absence of a market value the value of her use to the owner in the business in which she was engaged becomes a proper basis for estimating damages.

3. Shipping ⬿58(3)—Time charter value of vessel determined.

The time charter value of a vessel may be arrived at by estimating the time which is ordinarily consumed in making a voyage, where she is employed in carrying cargoes at a fixed rate of freight.

4. Shipping ⬿58(3)—Interest on damages for detention by charterer.

Interest on damages awarded against a charterer for detention of the vessel should be computed from the termination of the detention rather than from the beginning.

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Suit in admiralty by the Mobile & Gulf Navigation Company against the Sugar Products Company. Decree for libelant, and respondent appeals. Modified and affirmed.

For opinion below, see 256 Fed. 392.

Palmer Pillans and Alexis T. Gresham, both of Mobile, Ala., for appellant.

Harry T. Smith and Wm. G. Caffey, both of Mobile, Ala., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BRYAN, Circuit Judge. Appellee, as owner of the schooners W. D. Hossack and G. J. Boyce, filed its libel in personam against appellant, as charterer, to recover damages for breach of a charter party of each of said schooners.

The charter parties, which were in all respects similar, were dated March 27, 1918; recited that the vessels were then bound to Cienfuegos, Cuba; provided for return cargoes of molasses from the port of Mariel or Bahia Honda, Cuba, to Gulfport, Miss., or Mobile, Ala. (owner's risk); and contained the following provisions:

"It is agreed that the lay days for loading and discharging shall be as follows (if not sooner despatch): Commencing one clear day from the time captain reports his vessel ready to receive or discharge cargo at such safe anchorage as charterer may direct. Ten days to be allowed charterers for loading and discharging. And that for each and every day's detention by default of said party of the second part, or agent, $60 per day shall be paid by said party of the second part, or agent, to said party of the first part, or agent."

The breaches relied on were wrongful detentions, resulting from the charterers' failure to designate loading ports. The decree awarded damages for delay of the Hossack in the sum of $712.25, with interest from May 3, 1918, and for delay of the Boyce in the sum of $1,857.96, with interest from April 30, 1918.

The respondent admits liability. The only contention here is that the award is excessive. In the first place, it is urged that the per diem allowance for each vessel was too much, and, in the second place, that the Boyce was detained only 15 days, whereas the court allowed for a detention of 18 days. It is conceded that the court rightly allowed a detention of 7 days as to the Hossack. The per diem allowance to the Hossack was at the rate of $101.75, and to the Boyce was at the rate of $103.22.

During the year 1918, these schooners were engaged in carrying cargoes of lumber from Gulf ports to North Cuban ports. The Hossack had a capacity of 286,000 feet of lumber, and the Boyce had a capacity of 290,000 feet. There was an active demand for vessels of the size of the Hossack and Boyce in this trade. At the time these vessels were detained, there was a uniform rate of $20 per thousand feet of lumber. This rate was established by the Shipping Board, and vessels were not allowed to charge more. There was evidence which showed that the rate would have been higher, but for this action of the Shipping Board. There was also evidence that the market value of these vessels was as high as $175 per day, and other evidence that it was as low as $104 per day.

This testimony as to the per diem market value of these vessels was based on the average length of time consumed in making the round trip to Cuba, including time for loading and unloading. The time in which such a voyage is usually made is variously fixed at from 35 to 50 days. The court allowed 50 days for such a trip, and it is conceded that the per diem allowances made on this basis are correct; but it is the contention of the respondent that the libelant should be limited in the amount of its recovery to the demurrage rate of $60 per day.

[1.] The wrongful detention of these vessels does not fall within the express terms of the charter parties providing for demurrage, and

therefore the demurrage rate does not afford a correct measure of damages; either party may show that demurrage is not a true measure of loss by detention.

[2] The sum for which a vessel can be chartered in the market is the best evidence of her value, and, in the absence of a market value, the value of her use to the owner in the business in which she was engaged, becomes a proper basis for estimating damages. The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937.

[3] These rules for determining damages are recognized by the respondent, but it insists that the rule as to market value is applicable only to time charters, as distinguished from voyage charters. We have been cited to no case holding that view, and we have been unable to find any. Besides, there was evidence, as already stated, of the market value of the vessels in terms of time. It is true the time charter value was arrived at by estimating the time which was ordinarily consumed in making a voyage. Moreover, the respondent did not rely upon a time charter basis at the trial, but instead introduced evidence as to the length of a voyage from Gulfport or Mobile to North Cuban ports and return. There was ample evidence to support the finding of the court that such an ordinary voyage would usually require not more than 50 days. However, if the evidence is not sufficient to show market value, in the sense urged by respondent, it did show the value of the use of these vessels to their owner. It would not be fair or just, in estimating damages for the use of these vessels to their owner, to include periods of time when they were idle, or on demurrage; and only by these methods could it be shown that the damages awarded were excessive. In cases of this kind it is usually difficult to do more than estimate damages; but it is not for the party by whose default damages accrue to complain of this difficulty.

It is contended that the court erred in refusing to require libelant to produce its books, showing the earnings of the vessels. These assignments must fail, in view of the fact that the record shows the books were produced and tendered to respondent.

The court found that the Boyce was detained 18 days; respondent asserts that the evidence shows she was detained only 15 days. The dispute as to these 3 days forms the basis for the second contention that the damages awarded are excessive. The Boyce finished discharging her cargo at Cienfuegos on April 24, and was ready for her return voyage on that date. The respondent failed to name the loading port until May 9, during which time the vessel remained at Cienfuegos. The court below fixed the beginning of the detention as of April 30, for the reason that on April 29 the libelant notified respondent that the Boyce was at Cienfuegos awaiting orders. Respondent concedes liability for detention of 10 days elapsing up to May 9; and very well it might, because the evidence shows beyond dispute that before April 24 it was seeking to cancel the charter party, and that as early as April 27 it received a letter from libelant requesting immediate designation of loading port. The trial court might very well have allowed for 2 days' additional detention at Cienfuegos. On May 9 respondent requested that the Boyce proceed to Havana, and not to

either of the ports designated in the charter party. The vessel arrived at Havana on May 17, and was wrongfully detained there until May 25, when it was ordered to Bahia Honda, for its cargo, at which port it arrived on May 26, thereby suffering a clear loss of at least 8 days. Libelant claims a delay at Bahia Honda, due to the failure of respondent to comply with its undertaking to furnish clearance papers; but, without considering this claim at all, there was ample proof of detention for at least 18 days.

[4] The decree awarded interest from the beginning of the detention of each vessel. In this we think there was error, and that the interest should not be calculated until the expiration of the detention. However, the item of interest is so small as not to justify an allowance of costs to respondent, in the absence of an offer by respondent to pay the amount of the decree, with interest from the time the period of detention was at an end. The decree should be modified, so as to allow interest on the amount awarded for detention of the Hossack from May 9, 1918, and so as to allow interest on the amount awarded for detention of the Boyce from June 6, 1918.

As so modified, the decree is affirmed.