## TAISHO KAIUN KABUSHIKI KAISHA v. GANO MOORE CO.

(District Court, D. Delaware. May 18, 1926.)

No. 1019.

1. **Shipping ⊂⊃175—Charter party held to require loading by charterer with customary dispatch according to rules of port.**

Provision of a charter party requiring loading by charterer "with customary dispatch in accordance with the rules of the port of loading, but within 10 running days, Sundays and holidays excepted," is unambiguous, and the rules of the port govern, subject to the limitation of 10 days.

2. **Shipping ⊂⊃175—Provision of charter party requiring loading "with customary dispatch" to be read in relation to circumstances existing when loading is to be done.**

The words "with customary dispatch," in a charter party, do not relate to average or usual conditions, but are to be read and understood in relation to the circumstances, ordinary and extraordinary, existing at the time the loading is to be done.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Customary Dispatch.]

3. **Shipping ⊂⊃181—Lay days given charterer for loading held not affected by official order giving other vessels preference, but which did not go into effect until after lay days had expired.**

Lay days given a charterer for loading coal cargo held not affected by an order of the Interstate Commerce Commission giving other vessels preference in loading, where the lay days fixed by the charter party had fully expired before the order became effective.

4. **Shipping ⊂⊃175.**

Owner held entitled, under facts, to recover demurrage from charterer for delay in loading.

In Admiralty. Suit by the Taisho Kaiun Kabushiki Kaisha, owner of the steamship Meiwu Maru, against the Gano Moore Company. Decree for libelant.

Charles R. Hickox (of Kirlin, Woolsey, Campbell Hickox & Keating), of New York

City, and George W. Lilly, of Wilmington, Del., for libelant.

Charles F. Curley, of Wilmington, Del., for respondent.

MORRIS, District Judge. Taisho Kaiun Kabushiki Kaisha, a Japanese corporation and the owner of the steamship Meiwu Maru, filed its libel in admiralty against Gano Moore Company, a Delaware corporation, to recover demurrage for the detention of the ship at Hampton Roads, the port of loading, beyond the lay days allowed by the charter party. That contract provides: "Cargo to be loaded into steamer with customary dispatch, in accordance with the rules of the port of loading, but within ten (10) running days, Sundays and holidays excepted." The parties agree that the steamer tendered itself in readiness to receive cargo at 3 p. m. July 21, 1920, was certified for loading at 4:10 p. m. August 2, 1920, docked at coal piers at 3:30 p. m. August 5, 1920, commenced loading (cargo, 8,-940 tons; bunkers, 2,072 tons) at 5:30 p. m. August 5, 1920, and finished loading at 2 p. m. August 7, 1920. Vessels were certified for loading as soon as the cargo was ready. Hutchinson, p. 14; Bugg, p. 6. The respondent concedes that the cargo for the Meiwu Maru was not ready to load until 4 p. m. of August 2d.

The libelant contends that by the charter party the respondent agreed to load the cargo with customary dispatch; that by the employment of customary dispatch the vessel could have been loaded in 5 days and 23 hours, working time, after the vessel tendered itself ready; that, allowing for Sunday July 25th and the half holiday on July 24th, the lay days were thus brought to an end at 2 a. m. of July 29th; and that for the 9 days and 12 hours thereafter elapsing before the loading was actually finished the libelant is entitled to damages at the charter party rate of $2,-455.20 per day, less a payment of $1,568.60, or a total of $21,755.80, with interest from August 7, 1920.

[1] The primary contention of the respondent is that the contract of affreightment did not require loading with customary dispatch, but, on the contrary, fixed a definite period of 10 running days, with intervening holidays and Sundays, or an aggregate of 13 days from the time the ship tendered itself ready. With this contention I cannot agree. It would nullify the words "with customary dispatch in accordance with the rules of the port of loading, but," and make the charter party provision read "cargo to be loaded into steamer within ten (10) running days, Sundays and holidays excepted." Thus it would convert the provision from one requiring customary dispatch with a maximum period of 10 days, holidays and Sundays excepted, into one giving to the respondent for loading a fixed and absolute period of 10 running days, holidays and Sundays excepted, wholly without regard to the employment or nonemployment of customary dispatch. The words of the contract are plain and unambiguous. Consequently there is no room for construction, and hence no opportunity to resort to or apply any of the subsidiary rules of construction upon one or more of which the respondent relies. McKinney v. General Accident Fire & Life Assur. Co., 211 F. 951, 128 C. C. A. 449 (C. C. A. 8); Machen v. Yost, 54 App. D. C. 261, 296 F. 1008.

[2] The respondent next contends that the libelant has not established that loading with customary dispatch would not have required 10 running days, holidays and Sundays excepted, and that, consequently, the lay days cannot in any event be found to have been brought to an end before the expiration of 13 days from the time the ship tendered itself ready. This contention presents a question of fact, to be determined in the light of the principle that the words "with customary dispatch," as employed in a charter party, do not relate to average or usual conditions, but are to be read and understood in relation to the circumstances, ordinary and extraordinary, existing at the time the loading is to be done. Carver on Carriage of Goods by Sea, § 614; Empire Transp. Co. v. Philadelphia & R. Coal & Iron Co., 77 F. 919, 922, 23 C. C. A. 564, 35 L. R. A. 623. During the period in question the conditions prevailing in Hampton Roads were not normal. The port was more crowded than usual with vessels awaiting cargoes of coal. The unusual crowding had not been lessened when the Meiwu Maru was certified for loading. Moreover, 15 vessels which registered for cargo after the Meiwu Maru, and which, under the rules of the port, would ordinarily have been required to load in the order of their registration, were given priority over the Meiwu Maru by virtue of an Interstate Commerce Commission order that became effective on August 2d.

Yet, withal, both cargo and bunkers were aboard the Meiwu Maru in 4 days, 21 hours, and 50 minutes after the respondent had the cargo ready for loading. Most of the delay between the certification of the Meiwu Maru for loading and her actual docking—2 days, 23 hours, 20 minutes—was attributable to the loading of the 15 vessels out of their turn. This fact is conceded by the respondent. The

records of other vessels arriving between July 21st and August 7th, inclusive, showing the time elapsing between their registration for cargo and the completion of their loading, establish that no greater expedition than customary dispatch was employed in bringing the Meiwu Maru to her dock after the cargo was ready, or in thereafter placing her cargo and bunkers on board. Consequently there is ample evidence to establish that loading with customary dispatch during the period beginning July 21st would not have required, at the very most, more than 4 days, 21 hours, and 50 minutes' working time.

As, under the law, the duty of the charterer was to have its cargo ready (Carver on Carriage of Goods by Sea, §§ 252, 617), the lay days began to run at 3 p. m. July 21st, when the vessel tendered itself in readiness to receive cargo. They ended 4 days, 21 hours, and 50 minutes' working time thereafter. Thus, allowing for the intervening Sunday, July 25th, and the half holiday, Saturday, July 24th, the lay days were brought to an absolute end at 12:50 a. m. on July 28th. However, as the libelant, using 1,500 tons a working day as the factor by which to measure customary dispatch, fixes the termination of the lay days at 2 a. m. on July 29th, and, as that termination is more favorable to the respondent, it will be adopted. The time thereafter elapsing before the cargo and bunkers were all on board was 9 days and 12 hours.

[3] The respondent relies upon the Interstate Commerce Commission order of August 2d to justify some of the delay; but, as the lay days had completely expired before that order became effective, it cannot aid the respondent in any way. The Marpesia (C. C. A.) 292 F. 957, 968–970; Kearon v. Pearson, 7 H. & N. 386.

[4] Lastly, the respondent claims a deduction of 8 hours and 20 minutes as time consumed by the Meiwu Maru in bunkering. This claim is based upon the fact that between the time the ship began loading, 5:30 p. m. August 5th, and the time when the loading was completed, 2 p. m. August 7th, 44 hours and 30 minutes elapsed; that during that period 8,940 tons of cargo and 2,072 tons of bunkers were placed on board, and that the master signed a statement to the effect that of the 44 hours and 30 minutes the portion properly assignable to bunkering was 8 hours and 20 minutes. For the delay incident to bunkering the respondent should, of course, not be responsible. But, as the bunkering was done while the vessel lay at the dock, the actual lay days, as hereinbefore ascertained,

were increased by the length of time it required to bunker. Hence no further credit is due the respondent with respect to the time consumed in bunkering.

For the reasons stated, I am of the opinion and find that the libelant should recover from the respondent demurrage for the period of 9 days and 12 hours at the charter party rate of $2,455.20 a day, less the payment made of $1,568.60, or a net total of $21,-755.80, with interest thereon at 6 per centum per annum from the 7th day of August, 1920.