INTERCONTINENTAL TRANSPORTA-
TION CO., Inc., Plaintiff,

v.

The INDIA SUPPLY MISSION,
Defendant,

v.

CONTINENTAL GRAIN CO., Third-Party
Defendant.

No. 66 Ad. 191.

United States District Court
S. D. New York.

Dec. 2, 1966.

Burke & Parsons, New York City, for plaintiff (Raymond J. Burke, Thomas A. Dillon, Jr., and Alfred A. Meyer, New York City, of counsel).

Baker, Nelson, Williams & Mitchell, New York City, for defendant (O. Taft Nelson and Robert E. Meshel, New York City, of counsel).

Lord, Day & Lord, New York City, for third party defendant (John F. O'Connell, New York City, of counsel).

## OPINION

MacMAHON, District Judge.

These are motions for summary judgment. The case turns on the proper construction of a charter party.

The India Supply Mission chartered plaintiff's tanker to carry wheat from Houston to India. The charter party provided in part:

"4. Tanker to be loaded, stowed and trimmed, according to berth terms, with customary berth despatch, and if detained longer than eight (8) running days, Sundays and Holidays included, Charterers to pay demurrage at the rate of $1,500.00 * * * per day. * * *"

The tanker was loaded in six days, despite interruptions which wasted 3.7 days. The interruptions occurred because the wheat contained weevils and had to be fumigated. Plaintiff alleges that the loading took 3.7 days longer than "customary berth despatch," and sues India Supply for detention damages. India Supply has impleaded the supplier of the wheat, Continental Grain Co. India Supply and Continental Grain move for summary judgment.

If paragraph 4 had been omitted from the charter party, the law would have read in a requirement that the ship be loaded in a reasonable time. Beyond such time, the shipowner would have been entitled to detention damages, which are normally based on the ship's charter hire rate. "A reasonable time" is too vague a standard for most businessmen. It depends on many contingencies which cannot be predicted at the time of contracting, such as weather, strikes, crowded docks, etc. It would almost always be open to dispute. Most charter parties, therefore, add a clause like paragraph 4 in order to avoid litigation.

■ By paragraph 4, the parties replaced the common law liability with a much more precise scheme. They fixed liquidated detention damages (known as "demurrage") in an amount considerably less than the ship's charter hire rate. They also fixed eight days for loading (known as "lay days"). If the loading time exceeds eight days, the charterer has to pay demurrage whether or not such time is reasonable under the circumstances. On the other hand, the charterer is not liable for any delay which occurs within the lay days and during the

actual process of loading. "[T]he charterer is entitled to keep the ship the whole of the lay-days though he could have loaded her in less time." Scrutton, Charter Parties, p. 317 (17th ed. 1964), approved by Margaronis Nav. Agency, Ltd. v. Henry W. Peabody & Co. of London, Ltd., (1964) 1 Lloyd's List L.R. 173, 185–87.

■ Plaintiff disputes this. Plaintiff says that the demurrage clause "was intended to cover only delays due to weather, berth congestion and other normal delays normally foreseeable in loading cargo." (Plaintiff's brief, p. 7.) There is no such limitation in paragraph 4. Where there is no express exception, a demurrage clause, by settled construction, covers all delays during the process of loading, including failure to supply sufficient cargo.[1] The shipowner may not recover detention damages for delays covered by the demurrage clause.[2]

■■ Plaintiff insists that the charterer was under two obligations—to load within eight days, and to load "with customary berth despatch." "Customary berth despatch" is an imprecise standard similar to "a reasonable time."[3] It is meaningless and irrelevant here, and thus it does not raise a *relevant* issue of fact. "[I]f the charter is expressly one for discharge in a fixed time a reference in its printed form to 'customary dispatch' is insensible and inapplicable."[4]

This charter party is a fixed time charter. It was so held in The *"Amstelmolen"*[5] which involved an almost identical version[6] of the same standardized charter party used here (the Baltimore Berth Grain Charter Party). Similar clauses were also involved in Love & Stewart,

---

1. Scrutton, Charter Parties, p. 317 (17th ed. 1964).

2. Id. at p. 309.

3. Id. at p. 321 n. (r).

4. Id. at p. 321 n. (s). Accord: Carver, Carriage of Goods by Sea, p. 1029 (11th ed. 1963).

5. N. V. Reederij Amsterdam v. President of India (The "Amstelmolen"), (1960) 2 Lloyd's List L.R. 82, aff'd, (1961) 105 S.J. 510, 2 Lloyd's List L.R. 1.

6. "Steamer to be loaded according to berth terms with customary berth dispatch, and if detained longer than five weather working days * * * charterers to pay demurrage * * *."

Ltd. v. Rowtor S.S. Co.,[7] Alexander & Sons v. Aktieselskabet Dampskibet Hansa, et al.,[8] and Akteiselskabet Reidar v. Arcos, Ltd.[9] In the *Love* case, Lord Sumner said:

"[I]t is so clear that these printed provisions for lay days based on a time which is reasonable under all the circumstances stand in antithesis to lay days based on a number of days fixed * * * as to make it impossible * * * to give effect to both sets of words as measures of the *time* allowed for loading and discharging. The intention to have fixed lay days is clear and must prevail. * * * [T]hese printed provisions must refer to the *manner* of discharge for any effect they may have. * * *"[10]

In *The "Meiwu Maru"*[11] the wording of the clause was crucially different: "Cargo to be loaded into steamer with customary dispatch, in accordance with the rules of the port of loading, *but within ten (10) running days.*" (Emphasis added.) There the ten-day period was clearly only a maximum. Moreover, no demurrage rate had been set.

Plaintiff claims that the charterer breached its "absolute obligation" to furnish cargo and load it. Plaintiff cites four cases. In none of them did the delay occur during the actual process of loading. In *Sugar Products,*[12] the delay was caused by the charterer's failure to designate loading ports. This delay prevented the lay days from starting to run, and thus it was not covered by the demurrage clause. In *Empresa,*[13] it is arguable that the lay days had started to run. But another clause was also involved. The charterer had contracted, in this other clause, to pay the shipowner for "as many voyages as she can make," and he was frustrating the shipowner by deliberately refusing to commence loading promptly. In *Church,*[14] the charterer failed to give the vessel precedence in discharging. This delay occurred within the lay days, but it also violated a clause which was separate from the demurrage clause and which carried a penalty of twice the demurrage rate. In *Nolisement,*[15] the lay days had not run out, but the loading had been *completed.* The delay was caused by refusal to issue bills of lading. This delay violated a specific and separate clause in the charter party.

In the case at bar, India Supply loaded the ship within the lay days. The only delay occurred in the actual process of loading.

Accordingly, the motions for summary judgment are granted. There being no

---

7. (1916) 2 A.C. 527. "The cargo to be loaded at the rate of 125 fathoms daily and discharged at the rate of 125 fathoms daily reversible, with customary steamship despatch * * *. Should the steamer be detained beyond the time stipulated as above for loading and discharging demurrage shall be paid at the rate of * * *."

8. (1920) A.C. 88. (Clause identical to the one in Love; see footnote 7 supra.)

9. (1927) 1 K.B. 352; (1926) 25 Lloyd's List L.R. 513. (Clause identical to the one in Love; see footnote 7 supra.) This case held that the demurrage clause did not preclude "dead freight" damages, but only because it also held that such damages were *not* in essence detention damages. Suisse Atlantique Societe D'Armement Maritime S.A. v. N.V. Rotterdam-

sche Kolen Centrale, (1965) Lloyd's List L.R. 166, 175–78, agrees with this explanation.

10. (1916) 2 A.C. 527, 535 (emphasis added). Accord: Scrutton, op. cit. supra p. 321, text at n. (a).

11. Taisho Kaiun Kabushiki Kaisha v. Gano Moore Co. (The "Meiwu Maru"), 14 F.2d 985, 1926 A.M.C. 1277 (D.Del.).

12. Sugar Products Co. v. Mobile & Gulf Nav. Co., 268 F. 815 (5 Cir. 1920).

13. Empresa Maritima de Transportes, S.A. v. Transatlantic & Pacific Corp., 1960 A.M.C. 1140 (S.D.N.Y.).

14. New York & N.E. R. Co. v. Church, 58 F. 600 (1 Cir. 1893).

15. Nolisement v. Bunge & Born, (1917) K.B. 160.

just reason for delay, the Clerk of the Court is hereby directed to enter judgment in favor of The India Supply Mission and Continental Grain Co.

It is so ordered. No further order is necessary.