GLORIA STEAMSHIP COMPANY, owner of SS DUVAL, Plaintiff,

v.

INDIA SUPPLY MISSION, Defendant and 3rd-Party Plaintiff,

v.

GARNAC GRAIN CO., 3rd-Party Defendant.

No. 65 AD 435.

United States District Court
S. D. New York.

Jan. 10, 1968.

Levin, Kreis, Ruskin & Gyory, New York City, for plaintiff.

Baker, Nelson, Williams & Mitchell, New York City, for defendant.

Zock, Petrie, Sheneman & Reid, New York City, for 3rd-party defendant.

RYAN, District Judge.

INDIA SUPPLY MISSION, defendant and third-party plaintiff, moves after answer for summary judgment under Rule 56, F.R.C.P.

This action was filed by Plaintiff GLORIA STEAMSHIP COMPANY as owner of the SS DUVAL, to recover of Defendant INDIA MISSION SUPPLY $27,405.30, which plaintiff alleges is due to it under charter party it had with defendant for delays arising out of defendant's failure to have cargo available for the vessel at the agreed loading port of New Orleans.

Defendant denies that there is any payment due under the charter party.

A charter party dated March 3, 1964 was entered into on March 3, 1964 between Suwannee Steamship Company, Agents for GLORIA STEAMSHIP COMPANY, the owner of the SS DUVAL, and INDIA SUPPLY MISSION. It was on the form for carriage of grain cargo from the United States to India—"Baltimore Berth Grain Charter Party as Adopted and Modified by India Supply Mission." It provided for a single voyage to East or West India from one (1) safe U.S. Gulf Port, "at Charterer's option, and there

load, always afloat, from the said charters, or their Agents, a full and complete cargo," subject to guaranteed limits of 12,000 long tons of 2240 lbs., 5% more or less at Vessel Owner's option, at the West or East Coast India rates per long ton as specified in Clause 2 of the charter party.

The motion for summary judgment presents for construction and interpretation Clause 4 of the Charter Party, which provides:

"4. Vessel to be loaded, stowed and trimmed according to berth terms, with customary berth despatch, and if detained longer than 5 weather working days for ships loading at U.S.N.H. or Gulf ports and 6 weather working days for ships loading at U.S.N.P., Sundays and Holidays (and Saturday afternoons at the U.S. Gulf and U.S. N.H. Ports) excepted unless used, and if used, actual time used to count as laytime, Charterers to pay demurrage at the rate of $1,400.00 U.S. Currency, per day or pro-rata, provided such detention shall occur by default of Charterers or their Agents. If sooner loaded, Owners are to pay Charterers despatch at the rate of $700.00 U.S. Currency per day, or pro-rata for part of a day, for laytime saved. Vessel to work day and night including Saturdays, Sundays and Holidays if requested to do so by Charterers or their Agents."

The following facts appear undisputed on this motion:

INDIA SUPPLY MISSION nominated New Orleans for loading. This SS DUVAL arrived at the port on Thursday, April 16, 1964, and after passing cargo survey, tendered its notice of readiness at 0900 on Saturday, April 18, 1964. Under Clause "5" of the Charter Party, the lay days began to run at 0700 hours on the next business day after the tendering by the vessel of its notice of readiness to load, "whether in berth or not." The loading did not begin at the grain eleva-

tor until Monday, April 27, 1964 at 1800 and loading was completed by Tuesday, April 28, 1964. Following completion of the voyage and after discharge of the cargo at Madras, Calcutta, India, on July 17, 1964, Suwannee Steamship Company, Agents for GLORIA STEAMSHIP COMPANY, Owners, International Navigation Corporation, as Agents, billed INDIA SUPPLY MISSION on October 5, 1964 for "Demurrage at Loading and Discharging 4 days 21 hours 41 minutes $1400 per day, $6,864.86." INDIA SUPPLY MISSION paid this amount in full on November 10, 1964.

It is INDIA SUPPLY MISSION's contention that this billing represented the total demurrage [1] which accrued, both at the port of loading and at discharge. It is further contended that "the payment of the demurrage sum was received and accepted by the vessel owners in the form of a check payment on an unconditional basis."

It is the plaintiff shipowner's contention that the demurrage or "lay day" charges, which were billed to INDIA SUPPLY MISSION and which were paid, covered only the actual stipulated charges for the delays during the course of loading and discharging.

Nowhere do we find any support for this contention. The charter party is clear that, if the vessel is "detained longer" than the 5 weather working days, demurrage charges at a fixed amount begin to run, without limiting this detention to the process of loading or unloading. Whether the cargo was or was not available, lay days in favor of plaintiff against defendant started to run under Clause 5 "whether in berth or not." Sugar Products, 268 Fed. 815, is therefore not applicable. There the failure of the charterer to designate a loading port prevented the lay days under the charter from starting to run, and because there was no fixed demurrage for de-

---

1. Demurrage is "a sum agreed to be paid as liquidated damages for delay * * * beyond a stipulated time for loading or unloading". Scrutton on Charter Parties,

p. 305 (17th Ed., 1964). The fixed period of days within which a vessel must be loaded or unloaded are called "lay days."

tention prior to loading, the Court awarded actual damages for detention.

 As Judge McMahon pointed out in Intercon. Trans. Co. v. India Supply Mission, D.C., 261 F.Supp. 757, where there is no express exception, the demurrage clause covers delays during the process of loading including the not uncommon one of failure to supply cargo. See also Gilmore and Black, the Law of Admiralty, discussing contract demurrage for delay at the loading port "occasioned, as it often is, by failure of the charterer to provide a cargo on time." (p. 186)

 The fact that plaintiff billed and that it accepted defendant's check on the basis of the demurrage charges fixed in the charter party bespeaks the understanding of the parties to their agreement.

Having been paid in full for demurrage charges, plaintiff may not recover detention damages for delays covered by this clause.

Motion for summary judgment is granted and the complaint is dismissed. So ordered.